UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



RECEIVED
FEB 26 2014
PRO SE OFFICE

-----------------------------------------------------------------------X

MALEK HARRISON,

           Plaintiff,

- Against -

STATE OF NEW YORK,
COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPT.,
NASSAU COUNTY DETECTIVE, RONALD RISPOLI,
NASSAU COUNTY DETECTIVE, ANTHONY DICAPRIO,
NASSAU COUNTY DETECTIVE, JEFFREY S. MARSHALL,
NASSAU COUNTY OFFICE OF THE DISTRICT ATTORNEY,
JHOUNELLE CUNNINGHAM, Assistant District Attorney,
THE TJX COMPANIES, INC.,
NILS RENNER, TJX MARMAXX National Taskforce Investigator,
CHRISTINE GRIMAUDO, Marshalls Cashier,
US SECRET SERVICE,
US SECRET SERVICE AGENT, JOSEPH GERBINO,
GEOFFREY PRIME, ATTORNEY,
THE LAW OFFICE OF ELLIOT SCHLISSEL,

           Defendants.

-----------------------------------------------------------------------X

**COMPLAINT**

# CV 14 - 01296

**JURY TRIAL DEMANDED**

BIANCO, J.

TOMLINSON, M.J.

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  FEB 26 2014  ★

LONG ISLAND OFFICE

## COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the
same transaction or occurrence as alleged in this Complaint pending in
this Court, nor has any such action been previously filed and dismissed
or transferred after having been assigned to a judge.

**PLAINTIFF**, Malek Harrison, filing pro se, hereinafter Plaintiff, sues DEFENDANTS named herein for their individual and/or collective participation in (1) racial profiling (2) false arrest, (3) malicious prosecution, (4) corruption, (5) abuse of power, (6) conflict of interest, (7) insufficient and unethical representation by counsel, (8) legal malpractice and (10) the conspiracy to deny his constitutional right to a fair process and a fair trial. The Plaintiff alleges the following in support thereof:

## JURISDICTION AND VENUE

1)   Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for violations of his 4th, 5th, 6th, and 14th amendment rights, as secured by the United States Constitution.

2)   This Court has jurisdiction pursuant to the following statutes:

   a.   28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

   b.   28 U.S.C. §1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government;

   c.   28 U.S.C. §1367, which gives the district court supplemental jurisdiction over state law claims.

3.   Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because the events that gave rise to this Complaint occurred in this district.

## PARTIES

4.   Plaintiff, Malek Harrison, 242-19 135th Avenue, Rosedale, NY 11422, is a citizen of the United States and resides in the County of Queens, State of New York, which is in this judicial district.

5.   The State of New York is located in this judicial district.

6.      Defendant Nassau County Police Department, 7700 Jericho Turnpike, Woodbury, NY 11797 is located in a County within the State of New York, which is in this judicial district.

7.      Defendant Ronald Rispoli was a Nassau County Police Department Detective, who was acting under the color of state and federal law when he racially profiled Plaintiff, and manufactured and submitted falsified evidence, illegally arrested, and maliciously prosecuted the Plaintiff without probable cause.

8.      Defendant Anthony Dicaprio was a Nassau County Police Department Detective, who was acting under the color of state and federal law when he assisted in the false arrest of the Plaintiff without probable cause.

9.      Defendant Jeffrey S. Marshall was a Nassau County Police Department Detective, who was acting under the color of state and federal law when he assisted in the false arrest of the Plaintiff without probable cause.

10.     Defendant Nassau County Office of the District Attorney, 262 Old Country Rd, Mineola, NY is within a county of New York State, which is in this judicial district.

11.     Defendant Jhounelle Cunningham was an Assistant District Attorney for the Nassau County Office of the District Attorney, who maliciously prosecuted Plaintiff without probable cause and conspired to deny him due process and a fair trial.  She has committed malfeasance or official misconduct in the commission of unlawful acts, done in an official capacity, which affects the performance of her official duties.

12.     Defendant, The TJX Companies, Inc., 770 Cochituate Rd. Framingham, MA 01701, is the parent company of The Marmaxx Group and Marshalls Department Store located at 600 Hempstead Turnpike, Elmont, NY 11003, which is in this judicial district.

3

13.     Defendant Nils Renner was a National Taskforce Investigator for The Marmaxx
Group, a Division of The TJX Companies Inc., 770 Cochituate Rd., Framingham, MA
01701. He conducted the investigation and intentionally and falsely identified the Plaintiff
and conspired with the Nassau County Police Department to deny Plaintiff's constitutional
rights.  Nils Renner is currently employed by Island Trauma Services, 1 Pennsylvania Plaza
#6185, New York, NY 10119.

14.     Defendant Christine Grimaudo was a cashier for Marshalls Department Store, 600
Hempstead Turnpike, Elmont, NY 11003. She conspired with Defendant Det. Ronald Rispoli
of the Nassau County Police Department to racially profile and falsely identify Plaintiff as
the perpetrator in a theft of $900 from Marshalls Department Store. Christine Grimaudo's
home address is 346 Keller Ave, Elmont, New York, 11003

15.     Defendant United States Secret Service, 145 Pinelawn Rd., Ste 200N, Melville, NY
11747.

16.     Defendant Joseph Gerbino is a United States Secret Service Agent, who assisted in
the false arrest of the Plaintiff.

17.     Defendant Mayor Geoffrey Prime of South Floral Park and an attorney at the law firm
of Prime & O'Brien, 1000 Franklin Ave, Suite #201, Garden City, NY 11530, who conspired
with the Nassau County District Attorney's Office to deny Plaintiff's constitutional rights to
due process, effective assistance of counsel.

18.     Defendant The Law Office of Elliot Schlissel, 479 Merrick Road, Lynbrook, NY
11563, violated Plaintiff's constitutional rights through a deliberate denial of effective
assistance of counsel and for filing motion(s) and replies with the court, which contained

4

false and misleading information, including blatant falsehoods regarding money owed "for
services rendered."

## STATEMENT OF CLAIM

19.     On February 17, 2011 Plaintiff was placed under arrest and transported to CAP Squad
for arrest proceedings by Defendant Detective Ronald Rispoli, Nassau County Police
Department.  This arrest came over one (1) month after the alleged crime was committed
(January 12, 2011).  Assisting him in the unlawful arrest were Defendants Detectives
Anthony Decaprio and Jeffrey S. Marshall, also of the Nassau County Police Department.
Defendant U.S. Secret Service Agent Joseph Gerbino also assisted with this unlawful arrest
and investigation, according to police reports. These officials conspired to falsify a
complaint, namely "The Statement of Nils Renner", to identify and arrest the Plaintiff and to
charge him on seven (7) Felony counts of PL 170.30 [Criminal Possession Of A Forged
Instrument].  The Plaintiff contends that this manufactured piece of evidence includes
information that is so obviously false and without merit that it could not be supported by any
of the participants alleged to have contributed the information contained therein, nor that any
reasonable person would've accepted such statements as remotely possible or factual.  That
is, with the exception of the Defendant Nassau County Office of the District Attorney and
Defendant Assistant District Attorney Jhounelle Cunningham, whom, instead of accepting
the obvious police misconduct and immediately dismissing the case, conspired to ignore,
cover up and sanction the police misbehavior by maliciously prosecuting Plaintiff without the
existence of probable cause.  It should be noted that there was never an indictment by a grand
jury or otherwise in this case. The DA's Office went as far as "unlawfully handpicking" and

5

appointing Defendant Attorney Geoffrey Prime of the Assigned Counsel Defender Plan, who

is also a former Nassau County Assistant District Attorney on February 4, 2013, a date set for

trial, in an attempt to impede or derail Plaintiff's desire to address the issue of police

misconduct in a trial and pretrial proceedings and their conduct violates "clearly established

statutory or constitutional rights of which a reasonable person would have known."

20.     Evidence will show that Defendant Attorney Prime, in cooperation with Defendants

Jhounelle Cunningham and the Nassau County Office of the District Attorney, refused every

effort 'his Client' [Plaintiff] made to get him to heed his demands to incorporate Nils Renner

and the highly questionable "Statement of Nils Renner" into the defense's pretrial and trial

strategy. When pressed to call or subpoena Nils Renner, Attorney prime vehemently refused

and counseled the Plaintiff that the DA's Office did not need Nils Renner to make the

identification and/or to obtain a conviction in this case when the evidence clearly establishes

that this was the key issue to having the case dismissed. In fact, Defendant's pro se Notice

requesting subpoenas, which included Nils Renner was filed prior to Mr. Prime's

questionable appointment. Mr. Prime commented on numerous occasions, "what if Nils

Renner fell off the face of the earth?" and "the DA would still be able to obtain a conviction

on the basis of cashier Christine Grimaudo's in-court identification alone." Attorney Prime

ultimately decided to forego his defense of the plaintiff rather than being compelled to call

Nils Renner either in pretrial or trial proceedings, as directed by his client. He told Plaintiff,

Plaintiff's mother, Joan Harrison and uncle, Patrick Harrison, that he would NOT consider

calling Nils Renner to testify in his case under any circumstances whatsoever, which is

exceedingly negligent considering that Nils Renner made the initial identification of the

6

defendant. It is Plaintiff's belief that Attorney Prime refused to comply with his client's wishes because he was beholden to the Nassau County Office of the District Attorney and Jhounelle Cunningham, whom bade him not to pursue this line of strategy, which would likely expose their hidden agenda to cover up the obvious police misconduct. Ironically, Plaintiff filed a pro se MOTION FOR THE ISSUANCE OF SUBPOENAS IN ACCORDANCE WITH ARTICLE 610-CPL with the Nassau County Clerk's Office (February 4, 2013) prior to Attorney Prime's impromptu appointment to the case, which was made later that same day. Mr. Prime was given a copy of this document at the first opportunity, which was the day of his appointment (February 4, 2013). Please note that the case was scheduled for trial on that very day, which turned out only to be an obvious ploy by the DA's Office to try coerce a guilty plea from the defendant, as the Judge, on the record, became incensed with the Plaintiff, as if he was being held responsible for the case's existence in excess of two (2) years as of his Friday February 1, 2013 court appearance and the judge abruptly scheduled the case for trial on Monday, February 4, 2013.

21.     The first and only motion filed by Mr. Prime in the case came on or about June 17, 2013 after he was made aware that Plaintiff had filed a complaint with the FBI regarding the police misconduct, the DA's attempt to cover it up and civil rights violations that resulted, with an emphasis being placed on Defendant Detective Ronald Rispoli's manufacturing of falsified evidence, namely "The Statement of Nils Renner" and Jhounelle Cunningham's attempt to cover it up. Glaringly, Mr. Prime's OMNIBUS MOTION sought to remove the defense's only piece of evidence that would demonstrate police misconduct and eliminate Plaintiff's trial strategy of exposing that misconduct. Plaintiff immediately filed a pro se

7

MOTION FOR REASSIGNMENT OF COUNSEL on June 28, 2013. Despite the obvious differences and tension between he and his client Mr. Prime made his case to remain as counsel and was assisted by the Judge, who tried to convince Plaintiff to allow Mr. Prime to continue as counsel saying that, as counsel, Mr. Prime was doing a "good job" and doing all that he could to defend his client's best interest. This Judge, who saw what a good job Prime was doing as defense counsel, failed to acknowledge what supervising Judge, the Hon. Norman St. George did the very first time the case was put before him—that the DA's Office did not have a valid instrument with which to proceed to trial in the first place and demanded that ADA Jhounelle Cunningham bring her supervisor before court, after a brief recess, to explain to him why the DA never possessed a valid instrument in the over 31 months or 2 ½ years since Plaintiff's arrest and arraignment. Consequently, Plaintiff was granted his desired removal of his obviously conflicted counsel, Geoffrey Prime, on or about August 12, 2013, which ultimately paved the way for the case's dismissal on October 21, 2013. No longer did the DA's Office have in place it's hand-picked representative, who was willing to try to sabotage his client's case to assist in insulating his former employer Nassau County Office of the District Attorney, from being held accountable for malicious prosecution and covering up police misconduct. Defendant Geoffrey Prime's negligence was deliberate, as each and every point raised by his client was challenged, dismissed or ignored. A person who is engaged in the practice of law represents that he/she has the degree of knowledge and skill ordinarily possessed and used by others engaged in the general practice of law. The required knowledge and skill must be judged by the standard legal practice at the time the attorney represented the client. An attorney who undertakes to attend to the legal needs of a client represents also that he/she will use such knowledge, skill and care which attorneys of

8

ordinary ability and skill possess and exercise. The law, therefore, imposes upon an attorney the duty or obligation to have and to use that degree of knowledge and skill, which attorneys of ordinary ability and skill possess and exercise in the representation of a client, such as the plaintiff in this case. This is the standard by which to judge this defendant in his representation of plaintiff in this case. When a client is insistent on pursuing a critical witness, such as Nils Renner, whom the evidence suggests is key to destroying the prosecutions case-in-chief and his attorney refuses without any valid explanation or rationale then he is not operating in his client's best interest. Defendant Geoffrey Prime was not operating in the interest of his client, the Plaintiff Malek Harrison. It should be further explored how Mr. Prime obtained this last minute appointment on February 4, 2013, when Plaintiff was then represented by Legal Aid. Plaintiff was approached by a Legal Aid staffer, on the morning February 4th, 2013, who announces that her office could no longer represent him due to a conflict-of-interest involving someone from Marshalls' Loss-Prevention Department and the decision had already been made for the assignment of counsel from the Assigned Counsel Defender Plan. Plaintiff has never been able to get a satisfactory explanation regarding this "alleged conflict-of-interest", which led to this impromptu counsel switch from either the Legal Aid staffer or from Geoffrey Prime, who always shoved the issue to the side. Plaintiff believes that his appointment was out of the ordinary course of normal assignment protocol of the Assigned Counsel Defender Plan and may represent the key to the conspiracy between himself and the Nassau County Office of the District Attorney to sabotage Plaintiff's Defense. The assumption was to assign a prominent Black attorney and former Nassau County Assistant District Attorney, who would be most likely to gain the confidence of an unwitting Black client who wouldn't question his attorney's strategy, or the

9

lack thereof, and accept a plea agreement. Defendant Geoffrey Prime chose to employ a

strategy that would not result in adverse consequences for his former employer and refused to

pursue his client's superior strategy, which aimed to expose both the police and prosecutorial

misconduct at trial. Geoffrey Prime, when told that his client plans to file a lawsuit once the

case is dismissed, commented that it is "not my job to assist you in your lawsuit only to

defend you the way I see fit and to get you the best deal possible!" The problem with that is

the Plaintiff was consistent from the outset in his desire to pursue and obtain a full and fair

process and trial (if necessary), as guaranteed by the US Constitution and have always made

it clear to Mr. Prime that he was not interested in accepting any plea deal.


22.     To further demonstrate it's *abuse of power*, Defendant Nassau County Office of the

District Attorney has filed a new District Court Information October 18, 2013, on a separate,

nearly year and a half old case against this Plaintiff [Docket No. 2012NA012867]. It should

be noted that this action came only three (3) days prior to its dismissal of the case that forms

the basis for this Complaint [Docket No. 2011NA003833] and makes the timing for this

renewed District Court Information quite conspicuous. The Court should note that Detective

Ronald Rispoli was the arresting officer in both cases and manufactured evidence in the case

that led to the current complaint. The DA's Office is operating under the assumption that by

dismissing the first case and avoiding the exposure of malicious prosecution and cover up of

police misconduct in a public trial, it could continue to pursue the current case, against the

same defendant, without impunity or the taint of its illegal actions involved, therein, along

with its cover up of such acts that stained and imperiled that case in the first place. This

Court does not have to look far to see the obvious connections between the two cases: (1)

10

Ronald Rispoli made both arrests—the second coming without the benefit of any supporting deposition at the time of the actual arrest. Consequently, Mr. Rispoli also claims to be "currently assigned to the Crimes Against Property ("CAP") Squad" of the Nassau County Police Department, but our own investigation suggests that he had retired long before his October 18, 2013 signing of this District Court Information and would result in this document's inclusion of an obviously false statement, which "is punishable as a Class A Misdemeanor" and would nullify it as a valid instrument. To go as far as knowingly allowing a retired police officer to provide false information on a legal document regarding his status gives this Court sufficient evidence that the Nassau County Office of the District Attorney is corrupt beyond the public's imagination. This should also demonstrate the lengths the DA's Office would go to maliciously and vindictively prosecute individuals, without probable cause, only to try to insulate it from civil suits by trying to obtain any plea arrangements to make them ineligible for filing such civil complaints. Also, please note that this newly created SUPPORTING DEPOSITION was only created and allegedly signed on October 16, 2013—five (5) days prior to the dismissal of Docket No. 2011NA003833, which not only smacks of malicious, but also vindictive prosecution by the Nassau County Office of the District Attorney. Add to this the fact that the disclosure that District Attorney Law Assistant Carolyn Abdenour "*has written this statement*" on behalf of alleged witness Ntozake Morgan, some 17 months after the alleged crime took place, in which she introduces and identifies plaintiff by name [Malek Harrison], without any independent identification having preceded this document or since the alleged commission of the crime on May 24, 2012, we have another blatant instance of corruption and abuse of power in the Nassau County DA's Office. Therefore, this Court should have an easy time discovering and ruling

that this office's abuse and misconduct continues to run rampant by targeting African American defendants without probable cause and even going as far as employing an unwitting defendant's legal counsel to assist them in obtaining any form of plea agreement that would insulate that office and the State of New York from any future civil action. Defendant Jhounelle Cunningham proffered that Plaintiff accept an Adjournment in Contemplation of Dismissal ("ACD") and conspired with former Nassau County DA Geoffrey Prime of the Assigned Counsel Defender Plan, to steer defendant away from his intended strategy of proving in court that Detective Ronald Rispoli manufactured evidence, to instead accept such a plea, although Ms. Cunningham knew that she did not possess a valid instrument that would permit her to take the case to trial. So, all the subsequent threats of going to trial were hollow, since Judge St. George's revelation that no valid instrument ever existed in the matter. Any attorney worth his/her salt or, who otherwise, intended to operate in his client's best interest, would have or should have known that no such valid instrument existed and would have sought the legal path necessary to having such case dismissed promptly and avoiding the subsequent hardships incurred by the Plaintiff. Instead, Mr. Prime was operating in the best interest of the Nassau County Office of the District Attorney and not in the interest of his client, as required by law. Mr. Prime blatantly lied about submitting an application to the presiding judge to obtain approval for compensation to obtain a private investigator to seek out Nils Renner and on several occasions told the Plaintiff that the private investigator could not find Mr. Renner. The Plaintiff asserts that Mr. Prime never sought such approval nor did he ever hire any private detective to find Mr. Renner, as he continuously stated that he had no intention of ever calling Nils Renner, who Plaintiff was convinced was the key to obtaining a dismissal in the case. It was clear that Mr.

Prime's intention was "to deprive the defendant of an adjudication of what was clearly the stronger of the defenses available to him, thereby reducing his impending trial to a farce or a sham." As soon as Plaintiff was able to 'force' new counsel to request a subpoena from the court for the aforementioned Nils Renner, the Nassau County Office of the District Attorney dismissed all charges at Plaintiff's very next court appearance before the Hon. Norman St. George. The Court should note that no motions were filed before the Hon. Norman St. George to secure a dismissal in this matter and that the case against the Plaintiff was simply a matter of and illegal arrest that was knowingly pursued and maliciously prosecuted.

23.    Defendant Nils Renner, National Taskforce Investigator for The Marmaxx Group, who was tasked with the duty to investigate the alleged crime that occurred on January 12, 2011, conspired with an "anonymous Marshalls employee" and Detective Ronald Rispoli to introduce a falsified complaint identifying Plaintiff as the perpetrator. He's alleged, by the prosecution, to have investigated the incident and to have identified Plaintiff, therefore, it is necessary that he be made to come forward, along with the 'anonymous coworker' he is alleged to have mentioned and to bring forth the evidence that supported the conclusions made in the "Statement of Nils Renner" in his answer to this complaint.

24.    Defendant Christine Grimaudo, was a cashier employed by Marshalls, who conspired with Detective Ronald Rispoli to racially profile and intentionally and falsely identify the Plaintiff as the perpetrator, who handed her nine (9) counterfeit 100 dollar bills on three separate occasions during the course of the day on January 12, 2011. It is the plaintiff's assertion that Ms. Grimaudo, who failed to identify the counterfeit currency at the time of the

13

transaction, later identified Plaintiff as a way of removing suspicion from herself and her co-workers. It should be noted that Ms. Grimaudo's Supporting Deposition claims that the three (3) separate transactions occurred "at the same time," while the receipts demonstrates a wider timeframe. Additionally, in her Supporting Deposition she claims, "I was told later that these bills were counterfeit." The Court would have to believe that though she did not identify the bills as counterfeit, she was able to identify that it was young Black male "now known to me as Malek Harrison," on February 16, 2011, well over a month after the alleged commission of a crime. It is, therefore, Plaintiffs assertion that Ms. Grimaudo deliberately participated in a conspiracy to deny his constitutional rights by racially profiling him and for making a knowingly false identification, which led directly to his arrest the following day (February 17, 2011).

25.     Defendant, The TJX Companies, Inc., by virtue of fostering an environment whereby its employees, particularly Christine Grimaudo, Nils Renner, Maria Colace, Celeste Vasquez and the "anonymous Marshalls employee" referred to in the "Statement of Nils Renner," were encouraged and/or permitted to racially profile Black males in its stores and to readily accept, without valid evidence or probable cause, that Plaintiff, a Black male, committed the crime of using nine (9) 100 dollar counterfeit bills to make three (3) separate purchases in its Marshalls Department Store on January 12, 2011. The TJX Companies, Inc., must answer this complaint that its actions or inactions have led to a denial of Plaintiff's constitutional rights not to be racially profiled and falsely charged in the commission of such crime by the complicit actions of its employees, named herein. Therefore, it is Plaintiff's assertion that The TJX Companies, Inc., bear the brunt of the responsibility for the actions of its employees

and the harm caused to him as a result of his false arrest and malicious criminal prosecution—an ordeal that has lasted close to three (3) years before its dismissal.

26.     Defendant Elliot Schlissel is named in this complaint for legal malpractice, negligence, ineffective assistance of counsel and for including false and misleading information to the court in his firm's ORDER TO SHOW CAUSE TO BE RELIEVED from defendant's case, filed October 12, 2012. The Court should note that this was the Law Firm of Elliot Schlissel's only motion filed in this case in the more than 18 months that his firm served as counsel of record and included these false claims: "currently, Mr. Harrison owes this office a balance of $10,710.30 for services rendered," "the balance owed for my services remains unpaid to this date," and "Mr. Harrison's failure to pay the outstanding balance due to my firm for services rendered is a violation of the terms of his retainer agreement with my office." These falsified claims were made to the court simply to obtain a release from the ethical obligation to provide effective representation—none of which were ever provided. This firm's action has prejudiced the Plaintiff not only by prolonging the case through its unethical withdrawal, but have destroyed Plaintiff's confidence in the integrity in the legal profession. The Law Office of Elliot Schlissel collected $4,240 from the Plaintiff and simply made hollow appearances, while continuously demanding an additional $10,000 to take the matter to trial. This firm did absolutely nothing except to, essentially, seek $10,000 to take the matter to trial, while offering no relevant strategy and refusing to effectively provide any reasonable pretrial motions aimed at assisting his client. The Elliot Schlissel Law Firm is demanded to answer this complaint charging violations of his constitutional rights and the deliberate falsehoods it has made against this Plaintiff. A person who is engaged in the

15

practice of law represents that he/she has the degree of knowledge and skill ordinarily possessed and used by others engaged in the general practice of law. The required knowledge and skill must be judged by the standard legal practice at the time the attorney represented the client. An attorney who undertakes to attend to the legal needs of a client represents also that he/she will use such knowledge, skill and care which attorneys of ordinary ability and skill possess and exercise. The law, therefore, imposes upon an attorney the duty or obligation to have and to use that degree of knowledge and skill, which attorneys of ordinary ability and skill possess and exercise in the representation of a client, such as the plaintiff in this case. This is the standard by which to judge this defendant in his representation of plaintiff in this case. The Law Office of Elliot Schlissel's entire focus was to take this matter to trial and become the beneficiary of $10,000 from his client, while he knew or should have known that no valid instrument ever existed with which the matter could have been taken to trial in the 1st place. It is negligence for any attorney to play upon the fears of his client with this threat of trial, while failing to investigate acknowledge that no trial-worthy case ever existed.

## DAMAGES

Due to the unlawful arrest and malicious prosecution perpetrated against him, Plaintiff has suffered from the initial loss of liberty, loss of his five-year employment at Sears, loss of reputation and loss of numerous employment opportunities. The mental anguish, anxiety and emotional distress suffered as a result of the Defendants conduct in the deprivation of Plaintiffs civil rights has made it difficult for him to trust law enforcement officials, lawyers and the criminal justice system as a whole. Plaintiff is entitled to punitive damages if the jury finds that the defendant's conduct was reckless or callously indifferent to his federally protected rights or if the defendants were motivated

by any wrongful intent.  Prosecutorial misconduct is one of the leading or contributing causes of

wrongful convictions and if left up to the Defendants, named herein, and their conspiratorial devices,

Plaintiff would have been coerced into a wrongfully plea of guilt.  The malfeasance and/or official

misconduct committed here lends to society's mistrust of our valued law enforcement and judicial

institutions.

## REMEDY

WHEREFORE, Plaintiff requests that this Court enters a judgment against Defendants:

A.      STATE OF NEW YORK, COUNTY OF NASSAU, NASSAU COUNTY POLICE
DEPT., NASSAU COUNTY DETECTIVE, RONALD RISPOLI, NASSAU COUNTY
DETECTIVE, ANTHONY DICAPRIO, NASSAU COUNTY DETECTIVE, JEFFREY S.
MARSHALL, NASSAU COUNTY OFFICE OF THE DISTRICT ATTORNEY, and
ASSISTANT DISTRICT ATTORNEY JHOUNELLE CUNNINGHAM for the following
relief:

    (1)      Compensatory damages in whatever amount in excess of $5,000,000,
exclusive of cost and interest, that Plaintiff is found to be entitled;

    (2)      Punitive/exemplary damages in whatever amount in excess of $20,000,000,
exclusive of cost and interest, that Plaintiff is found to be entitled;

B.      THE TJX COMPANIES, INC., NILS RENNER, TJX MARMAXX National
Taskforce Investigator and CHRISTINE GRIMAUDO for the following relief:

    (1)      Compensatory damages in whatever amount in excess of $1,000,000,
exclusive of cost and interest, that Plaintiff is found to be entitled;

    (2)      Punitive/exemplary damages in whatever amount in excess of $4,000,000,
exclusive of cost and interest, that Plaintiff is found to be entitled;

C.      US SECRET SERVICE, US SECRET SERVICE AGENT and JOSEPH GERBINO
for the following relief:

    (1)      Compensatory damages in whatever amount in excess of $250,000, exclusive
of cost and interest, that Plaintiff is found to be entitled;

(2)     Punitive/exemplary damages in whatever amount in excess of $1,000,000, exclusive of cost and interest, that Plaintiff is found to be entitled;

D.      GEOFFREY PRIME, ATTORNEY, who, Plaintiff contends participated in a conspiracy with Jhounelle Cunningham and the Nassau County District Attorney's Office to commit malpractice, negligence, and conflict-of-interest in violation of his civil rights and as a result he has suffered injury for which damages are sought in the form of the following relief:

(1)     Compensatory damages in whatever amount in excess of $2,000,000, exclusive of cost and interest, that Plaintiff is found to be entitled;

(2)     Punitive/exemplary damages in whatever amount in excess of $8,000,000, exclusive of cost and interest, that Plaintiff is found to be entitled;

E.      ELLIOT SCHLISSEL, ATTORNEY, who Plaintiff contends that as a result of defendant's malpractice plaintiff suffered injury for which damages are sought in the form of the following relief:

(1)     Compensatory damages in whatever amount in excess of $2,000,000, exclusive of cost and interest, that Plaintiff is found to be entitled;

(2)     Punitive/exemplary damages in whatever amount in excess of $8,000,000, exclusive of cost and interest, that Plaintiff is found to be entitled;

I declare under the Penalty of jury that the foregoing is true and correct.

Signed this **25**th day of February, 2014

filed: February 26th, 2014
    Patrick R. Harrison

Plaintiff: _Malek Harrison_
                Malek Harrison
                242-19 135th Avenue
                Rosedale, NY 11422
                (718) 704-4155

18