UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MALEK HARRISON,

                               Plaintiff,

              v.

STATE OF NEW YORK, COUNTY OF NASSAU, NASSAU COUNTY POLICE DEPT., NASSAU COUNTY DETECTIVE RONALD RISPOLI, NASSAU COUNTY DETECTIVE ANTHONY DICAPRIO, NASSAU COUNTY DETECTIVE JEFFREY S. MARSHALL, NASSAU COUNTY OFFICE OF THE DISTRICT ATTORNEY, JHOUNELLE CUNNINGHAM, ASSISTANT DISTRICT ATTORNEY, THE TJX COMPANIES, INC., NILS RENNER, TJX MARMAXX, NATIONAL TASKFORCE INVESTIGATOR, CHRISTINE GRIMAUDO, MARSHALLS CASHIER, US SECRET SERVICE, US SECRET SERVICE AGENT JOSEPH GERBINO, GEOFFREY PRIME, ATTORNEY, THE LAW OFFICE OF ELLIOT SCHLISSEL,

                               Defendants.

**MEMORANDUM AND ORDER**

14-CV-01296 (LDH)(AKT)

---

LaSHANN DeARCY HALL, United States District Judge:

       Plaintiff Malek Harrison, proceeding pro se, brings the instant action against the County of Nassau, Nassau County Police Department, Nassau County Office of the District Attorney, Detective Ronald Rispoli, Detective Anthony DiCaprio, Detective Jeffrey Marshall, and Assistant District Attorney ("ADA") Jhounelle Cunningham,[1] asserting claims for false arrest, malicious prosecution, conspiracy to deprive him of his due process rights, and *Monell* liability pursuant to 42 U.S.C. § 1983. Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss Plaintiff's complaint in its entirety.

---

[1] All other Defendants named in the complaint were previously dismissed from this action. (ECF Nos. 60, 65.)

## UNDISPUTED FACTS[2]

On January 12, 2011, a man approached a cash register at Marshalls in Elmont, NY, and made three separate purchases using nine one-hundred dollar bills. (Reissman Decl. Supp. Mot. Summ. J. ("Reissman Decl."), Ex. C at 12[3], ECF No. 116.) The cashier who rang up the transaction was Christine Grimaudo. (Nassau County Defendants' Statement of Material Facts Pursuant to Local Civ. R. 56.1 ("Defs.' 56.1") ¶¶ 2-3, ECF No. 116-1; Reissman Decl., Ex C.) The transaction was reported to Nils Renner, the National Task Force Investigator for Marshalls' affiliated company, the Marmaxx Group. (Defs.' 56.1 ¶ 1.) Renner reviewed the bills and the receipts from the transactions. (Reissman Decl., Ex. A at 6.) Renner observed that at least three of the bills had identical serial numbers, and he believed all nine bills were counterfeit. (*Id.*) At some point, Renner received an anonymous call from a store employee who identified the purchaser as Plaintiff. (*Id.*) Renner contacted Detective Rispoli and turned over the information related to the transaction, including the counterfeit currency. (*Id.*, Ex. B at 9.) On February 15, 2011, Renner, under penalty of perjury, signed a statement attesting to the investigation he conducted into the counterfeit bills. (*Id.,* Ex. A at 6.) Detective Rispoli verified that the bills were counterfeit, and notified U.S. Secret Service Agent Gerbino, who confirmed the bills were counterfeit.[4] (Reissman Decl., Ex. B at 9.) On February 16, 2011, Detective Rispoli showed a

---

[2] The following facts are taken from Defendants' statements of material facts pursuant to Local Rule 56.1 and annexed exhibits. Plaintiff provided no statement of material facts, but the Court has considered exhibits that were attached to his opposition papers. Unless otherwise noted, the facts are undisputed.

[3] Pagination refers to the page numbers assigned by ECF.

[4] In his opposition papers to the motion for summary judgment, Plaintiff moved the Court to reopen discovery and requested an extension to oppose Defendants' motion for summary judgment as he had submitted a Freedom of Information Act Request on May 28, 2020 to the Secret Service to obtain any records of their investigation into this incident. (Pl.'s Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") 4, 6, ECF No. 119; Pl.'s Exs., ECF No. 119-1 at 2.) Discovery had closed on May 1, 2020, after a period of almost three years in which Plaintiff made no meaningful effort to complete discovery. (May 1, 2020 Order.) Nevertheless, on January 6, 2021, the Court held a status conference and reopened discovery for 30 additional days to allow Plaintiff an opportunity to obtain any additional information he wished the Court to consider in opposition to Defendants' motion. (Jan. 6, 2021 Minute Entry.) Plaintiff filed no additional discovery during this period. Moreover, on January 6, 2021, Defendants filed an affidavit that they had collected from the Secret Service indicating that the agency has no information related to the

photo array of six faces to Grimaudo, who, under penalty of perjury, signed a statement that identified Plaintiff as the person who made the January 12 purchases at her register. (Defs.' 56.1 ¶¶ 2-3; Reissman Decl., Ex. C at 12.)

On February 17, 2011, Detective Rispoli arrested Plaintiff on seven charges of criminal possession of a forged instrument. (Defs.' 56.1 ¶ 8.) ADA Cunningham prosecuted the criminal case against Plaintiff. (*Id.* ¶ 9.) Ultimately, in October 2013, the criminal charges against Plaintiff were dismissed because the memories of witnesses, including Grimaudo's, had faded. (*Id.* ¶ 10.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330–31 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all

---

arrest of Plaintiff. (ECF No. 120.) Accordingly, the Court closed discovery on March 3, 2021. (Mar. 4, 2021 Order.)

justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted), including when facing a summary judgment motion, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). Nevertheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* at 50 (internal quotation marks omitted).

## DISCUSSION

### I.     False Arrest

"Probable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (internal modification omitted). Defendants argue there is no question of material fact as to whether there was probable cause for Plaintiff's arrest. (Nassau County Defs.' Mem. L. Supp. Mot. Summ. J. ("Defs.' Mem.") 14-16, ECF No. 116-2.) The Court agrees.

An officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). A court "must consider only those facts available to the officer at the time of the arrest and immediately before it." *Stansbury*, 721 F.3d at 89 (internal modification omitted). "A court examines each piece of evidence and considers its probative value, and then "looks to the totality of the circumstances to evaluate

4

whether there was probable cause to arrest the plaintiff." *Id.* (internal modification and quotations omitted).

Here, Detective Rispoli had the following facts supporting probable cause: (1) nine counterfeit bills used to purchase goods at Marshalls, which were confirmed to be counterfeit by Secret Service Agent Gerbino, (Reissman Decl., Ex. B at 9); (2) a positive identification of Plaintiff by Grimaudo, the cashier who rang up the three transactions, after she was shown a photo array of six photographs, (*id.*, Ex. C at 12); and (3) the complaint signed by Renner, (*id.*, Ex. A at 6).

The positive identification of a perpetrator by a witness or a victim can form the basis for probable cause, "unless the circumstances raise doubt as to the person's veracity." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). Plaintiff presses that the Court should doubt Grimaudo's veracity for several reasons. *First,* she was not mentioned in Renner's statement, and there is nothing in the record that indicates how the police identified her as the cashier in the transaction. (Pl.'s Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") 3, ECF No. 119.) *Second*, because Grimaudo had no knowledge that the bills were counterfeit when she rang up the transaction, she would have no reason to recall that transaction one month later out of the potentially hundreds of transactions that occurred since then at her register. (*Id.*) *Third,* Grimaudo's failure to remember the incident or her identification of Plaintiff in the photo array in 2013 casts doubt as to the veracity of her initial identification in 2011. (*Id*. 3-4.)

Plaintiff has cited to no caselaw to support an argument that these circumstances should be fatal to the Court finding that probable cause existed for the arrest. That there is no evidence about how the police identified Grimaudo as the cashier involved or that she made the identification one month after the incident does not render the identification invalid. Grimaudo

5

identified Plaintiff under penalty of perjury and had no incentive to single out Plaintiff as the perpetrator. *See Stansbury*, 721 F.3d at 91 ("[The officer] had no reason to doubt the honesty of [two witnesses], each of whom made statements under penalty of perjury and lacked incentive to single out [the plaintiff] as the perpetrator."). Grimaudo positively identified Plaintiff from a photo array of the six individuals, all of whom had similar hairstyles and physical characteristics. (Reissman Decl., Ex. C at 12.) There is nothing in the record to suggest the photo array was improper. *Cf. Stansbury* , 721 F.3d at 90  (condemning use of a one-photograph array to confirm identity); *United States v. Eltayib*, 88 F.3d 157, 166 (2d Cir. 1996) ("A photo array is improperly suggestive if the picture of an accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." (internal quotation marks and brackets omitted)). Lastly, because the Court must only consider the facts available at the time of the arrest and immediately before it, Grimaudo's failure to remember the incident or the photo array two years later is irrelevant for the inquiry into probable cause at the time of the arrest.

Plaintiff further presses that the Court should not consider Renner's sworn statement because it was falsified. (Pl.'s Opp'n 2-3.) Plaintiff argues that he contacted Renner during discovery and Renner refused to sign an affidavit affirming that Renner was the author of the statement he submitted to Detective Rispoli. (*Id.* 2.) Plaintiff offers a theory that Detective Rispoli forged Renner's signature. (*Id.*) Moreover, Plaintiff argues that relying on Renner's complaint to support probable cause for his arrest "proves the entire system [is] altogether rigged . . . in favor of maintaining a corrupt judicial process against people of African descent." (*Id*. 3.) However, none of Plaintiff's arguments regarding Renner are supported by citations to admissible evidence or go beyond conclusory allegations or unsubstantiated speculation. *See*

6

*Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) ("While all factual ambiguities must be resolved in favor of the nonmoving party, the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." (internal quotations omitted)). Accordingly, these arguments fail and the claim against Defendants Rispoli, Marshall, and Dicaprio for false arrest is dismissed.

**II. Immunity**

Defendants argue that the claims against Assistant District Attorney Cunningham for malicious prosecution and conspiracy to deprive Plaintiff of due process rights must be dismissed as she is immune from suit. (Defs.' Mem. 11-14.) The Court agrees.

Absolute immunity bars civil suits against a prosecutor for advocatory conduct that is "intimately associated with the judicial phase of the criminal process." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)). Immunity attaches to conduct "preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* This is because "[t]he efficient, and just, performance of the prosecutorial function would be chilled if Government attorneys were forced to worry that their choice of trial strategy and tactics could subject them to monetary liability, or at best, the inconvenience of proving a 'good faith' defense to a § 1983 action." *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981). This conduct to which immunity attaches includes decisions about "whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Giraldo*, 694 F.3d at 165 (quoting *Imbler*, 242 U.S. at 341 n.33). The question asked is "whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Ogunkoya v.*

7

*Monaghan*, 913 F.3d 64, 69 (2d Cir. 2019). An official claiming immunity bears the burden of showing that immunity applies. *Giraldo*, 694 F.3d at 165.

Here, Plaintiff argues that ADA Cunningham relied on the allegedly forged complaint made by Renner in deciding to bring charges against Plaintiff. (*See* Pl.'s Opp'n 3.) Moreover, Plaintiff argues ADA Cunningham failed to request certain records from Marshalls because she knew that no such records existed—or, in other words, that she was somehow complicit in a scheme to prosecute Plaintiff for a crime he did not commit. (Pl.'s Mem. 4-5.) However, these are claims against ADA Cunningham for conduct that is squarely within her function as a prosecutor—namely her decisions about whether to prosecute, and what evidence to collect and present. And, even assuming that Plaintiff had adduced any evidence to support these wild conjectures, relying on falsified evidence does not take a prosecutor outside of the protection of immunity. *See Taylor*, 640 F.2d at 452 (observing that falsification of evidence, coercion of witnesses, failure to drop charges until immediately before trial, the solicitation and subornation of perjured testimony, the withholding of evidence, or the introduction of illegally-seized evidence at trial does not create liability in damages). Accordingly, the claims against ADA Cunningham are dismissed.

### III. Malicious Prosecution

Plaintiff also bring a malicious prosecution claim against Detective Rispoli. The elements of a malicious prosecution claim are: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017). Probable cause, in the context of malicious prosecution, exists where "facts and circumstances [] would lead a

reasonably prudent person to believe the plaintiff guilty." *Stansbury*, 721 F.3d at 95. Defendants argue that the Court should grant summary judgment on this claim because probable cause existed for the prosecution. (Defs.' Mem. 16-17.) The Court agrees.

The Court has already found there was probable cause for the arrest. Where there was probable cause to arrest, plaintiff must show that the defendant learned of some "intervening facts" undermining probable cause "between arrest and initiation of prosecution, [or the] claim[ ] of malicious prosecution cannot survive." *Thomas v. City of New York,* 562 F. App'x. 58, 60 (2d Cir. 2014); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *as amended* (May 21, 1996) ("In order for probable cause to dissipate [between arrest and prosecution], the groundless nature of the charges must be made apparent by the discovery of some intervening fact."). Plaintiff has adduced no evidence that Detective Rispoli learned of any intervening facts undermining probable cause that came to light after his arrest. Such lack of evidence warrants dismissal. *See Soto v. City of New York*, 132 F. Supp. 3d 424, 53 (E.D.N.Y. 2015) (granting summary judgment for defendants where plaintiff produced no evidence that law enforcement officers became aware of exculpatory evidence that could undermine that probable cause after arrest); *Leogrande v. Suffolk Cty.*, No. 08-CV-3088, 2016 WL 889737, at *4 (E.D.N.Y. Mar. 9, 2016) (granting summary judgment to defendant officers where, in part, plaintiff adduced no post-arrest facts that would alter the initial finding of probable cause). Plaintiff's malicious prosecution claim is therefore dismissed.

## IV. *Monell*[5]

Plaintiff has adduced no evidence to support his constitutional claims, and accordingly, any claim pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978) cannot lie.

---

[5] As Defendants argue, (Defs.' Mem. 7-8), neither the Nassau County Police Department nor the Nassau County District Attorney's Office are suable entities and the claims against them are therefore dismissed. *See, e.g., Allen v.*

9

*See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (observing that *Monell* liability does not lie where a municipality's officer does not inflict constitutional harm); *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir. 2006) ("[*Monell*] extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."). Moreover, even if Plaintiff had adduced evidence to support any of his constitutional claims, a single incident, like the one alleged here, cannot form the basis for a *Monell* claim. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the complaint is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York  
      March 29, 2021

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge

---

*New York*, No. 15-CV-3653 JS AYS, 2015 WL 6507477, at *3 (E.D.N.Y. Oct. 27, 2015) (dismissing claims against police department and district attorney's office because "[i]t is well-established that under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued").